## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TOMAS NOEL GUEVARA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )     Case No.  CIV-10-027-W |
| | ) |
| DAVID MILLER, Warden, | ) |
| | ) |
| Respondent. | ) |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent has filed a response [Doc. #24] to the petition and Petitioner has filed a reply [Doc.#28].  For the following reasons, it is recommended that the petition be denied.

## I.     Background[1]

On April 2, 2006, Officer Harold James executed a traffic stop on Highway I-35 in Oklahoma City, Oklahoma.  Officer James, a member of the Central Oklahoma Metro Interdiction Team (COMIT), had witnessed the tractor-trailer rig, in which Petitioner was a passenger, illegally straddle two lanes of the highway.  Tr. at 21-23.  After questioning the driver, Manuel Cordova, and Petitioner, Officer James became suspicious because of their inconsistent, contradictory answers to his questions and the  discrepancies in Mr. Cordova's

---

[1]This summary has been taken from the trial transcript (Tr.) in Case No. CF-2006-2254 in the District Court of Oklahoma County.

log book and based on his suspicion of criminal activity, Officer James asked for permission to search the tractor and trailer . Tr. 25-33.  Both Petitioner and Mr. Cordova agreed to the search. Tr. 39.  Officer James contacted the K-9 unit, and  Officer Rodney Naico arrived at the scene with his trained drug dog.  Tr. 40, 84.  The dog's behavior indicated that he had detected the odor of drugs near the refrigerator (refer) unit of the truck.  Tr. 87-90.  At that point, Officer James and other members of the COMIT team who had arrived at the scene conducted a search.  Tr. 40.  Officer James crawled over the pallets containing the legitimate load, and when he reached the point where he could see the refrigeration (refer) unit, he noticed that one of the hex bolts was worn, indicating the bolt had been removed a number of times.  Tr. 42-46, 75.  Officer James worked the bolt loose with his fingers, and when he removed it, he could see a number of foil wrapped packages inside the refer unit.  Tr. 46.  Officer James removed and cut into one of the foil packages, and his training and experience caused him to believe the package contained cocaine.  Tr. 47.  Petitioner and Mr. Cordova were taken into custody, and the team ultimately recovered 108 kilos of cocaine and 92 kilo-sized bundles of marijuana.  Tr. 57-60.

Petitioner was convicted, after a jury trial, of trafficking in illegal drugs (cocaine) and sentenced to twenty years in prison.  Petitioner filed a direct appeal raising two grounds for relief:

1.   The State presented insufficient evidence to prove that Petitioner "knowingly" trafficked in a controlled substance;

2.   The trial court erred in failing to adequately instruct regarding the "beyond a reasonable doubt" standard.

2

Response, Ex. 1 (Brief For and on Behalf of Tomas Noel Guevara). The Oklahoma Court of

Criminal Appeals (OCCA) affirmed Petitioner's conviction.  Response, Ex. 3 (*Guevara v.*

*State of Oklahoma*, Case No. F-2007-82).

Petitioner sought post-conviction relief in the state district court raising the following

grounds for relief:

1.    The trial court abused its discretion in multiple rulings and evidentiary matters;

2.    Petitioner was denied a fair trial and due process of law where evidence was improperly admitted;

3.    The prosecutor failed to provide a copy of the electronically recorded interrogation of Petitioner in violation of the court's discovery order and *Brady v. Maryland*, 373 U.S. 83 (1963);

4.    Petitioner was denied a fair trial and due process of law because Detective Aragon was allowed to testify as an expert witness on trucking businesses;

5.    Petitioner was denied a fair trial and due process of law by prosecutorial misconduct during closing arguments when the prosecutor expressed her personal belief in Petitioner's guilt, disparaged defense counsel, bolstered the credibility of the State's witnesses, and urged that a failure to convict Petitioner would be displeasing to God;

6.    Petitioner was denied his right to seek assistance from his home country of El Salvador under the Vienna Convention;

7.    Petitioner was denied a fair trial and due process of law because he is innocent of the crime for which he was convicted;

8.    Newly discovered evidence exists that the owner of the trailer in which the drugs were located was subsequently arrested by federal authorities;

9.    Petitioner was denied a fair trial and due process of law where the State brought into the courtroom the 200 kilograms of cocaine Petitioner was accused of trafficking;

3

10.    Petitioner was subjected to an illegal search and seizure;

11.    Petitioner was prejudiced by the trial court's allowing multiple armed guards to deliver the cocaine into the courtroom daily;

12.    Petitioner received ineffective assistance of trial counsel in that counsel failed to obtain an independent translation of the recorded conversations between Petitioner and Mr. Cordova; failed to object to the legality of the search and seizure; failed to preserve the record on multiple instances of errors by the trial court; failed to object to the improper admission of evidence; failed to request a continuance of the jury trial upon learning that the State had failed to comply with a discovery order of the court; failed to object to the testimony of Detective Aragon; failed to object to multiple instances of prosecutorial misconduct; failed to inform Petitioner of his right to seek assistance from his consulate; failed to properly investigate and discover the registered owner of the trailer Petitioner and Mr. Cordova were hauling; failed to object to the 200 kilograms of cocaine being brought into the courtroom; and failed to seek exclusion of a juror who was improperly prejudiced by the display of narcotics; and

13.    Petitioner received ineffective assistance of appellate counsel in that appellate counsel failed to raise the aforementioned claims on direct appeal.

Petition at 23-24.

    The trial court denied the application, finding that the only cognizable claim was Petitioner's ineffective assistance of appellate counsel claim, the rest of the claims being procedurally barred under the waiver doctrine.  Response, Ex. 4 (Order Denying Application for Post-Conviction Relief) at 6.  The trial court considered the merits of Petitioner's ineffective assistance of appellate counsel claim and concluded that Petitioner's claim did not meet the "rigorous standard announced in *Strickland v. Washington*[.]"  *Id.*  The OCCA affirmed the denial of the application for post-conviction relief.  Response, Ex. 5.  The OCCA "reviewed Petitioner's Application and its attachment including Petitioner's Affidavit[,]" and

concluded that even if "presumed true," the allegations "are insufficient to establish any error that would have resulted in reversal or modification on appeal."  Response, Ex. 5 at 6.  The OCCA also found that the issue concerning "newly discovered evidence" could have been raised on direct appeal as evidence in the record demonstrated that Petitioner had received a letter from his appellate counsel informing him of the alleged "newly discovered evidence" some five months before the OCCA's decision on direct appeal.  *Id.* at 3 n. 1.

## II.   <u>Grounds for Relief</u>

Petitioner asserts the following grounds for habeas relief:

1.   The State failed to prove beyond a reasonable doubt that petitioner knowingly trafficked in a controlled dangerous substance;

2.   The jury instructions did not adequately instruct on the meaning of "beyond a reasonable doubt" in violation of due process;

3.   Petitioner was deprived of a fair trial through the trial court's abuse of discretion;

4.   Petitioner was deprived of a fair trial because of improperly admitted evidence;

5.   Petitioner was deprived of a fair trial in that the prosecutor failed to comply with a discovery order;

6.   Petitioner was deprived of a fair trial through improper certification of an expert witness;[2]

7.   Petitioner was deprived of a fair trial through prosecutorial misconduct;

---

[2]In his Reply, Petitioner acknowledges that Detective Aragon's experience with the trucking business qualified her as an expert, and specifically withdraws this ground for relief  as well as the ground based on counsel's alleged ineffectiveness in failing to object to Detective Aragon's testimony.  *See* Reply at 6.

8.      Petitioner's conviction and sentence are in violation of Article 36 et seq. of the Vienna Convention;

9.      Petitioner was deprived of a fair trial in that Petitioner is actually innocent;

10.     Petitioner is in possession of newly discovered evidence of material facts, not presented at trial, that requires vacation of conviction and sentence in the interest of justice;

11.     Petitioner was deprived of a fair trial in that the jury was prejudiced by the presence of 200 kilos of cocaine being brought into the courtroom daily by multiple armed guards;

12.     Petitioner was deprived of his right to be free from unreasonable search and seizure, in violation of the Fourth Amendment;

13.     Petitioner was deprived of effective assistance of trial counsel; and

14.     Petitioner was deprived of effective assistance of appellate counsel in that appellate counsel failed to raise Petitioner's ineffective assistance of counsel claims and the underlying claims on direct appeal.

Petition at 6-13.

## III.   <u>Standard of Review</u>

Of these fourteen claims only grounds one, two and fourteen have been adjudicated on the merits by the OCCA and are therefore subject to the standards of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See Turrentine v. Mullin*, 390 F.3d 1181, 1188 (10th Cir. 2004). According to AEDPA, this Court may grant Petitioner habeas relief on these claims only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under this standard, judicial review is directed to the result of the state appellate court's decision,

not its reasoning.  *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result – not its rationale – is 'legally or factually unreasonable.'").  There is no text in the statute requiring that a state court's decision include a statement of the reasoning underlying the decision.  "The statute refers only to a 'decision,' which resulted from an 'adjudication.'" *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 784 (2011).   A state court decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000).  It is not enough that the state court decided an issue contrary to a federal court's conception of how the rule should be applied; the state court decision must be "diametrically different," "opposite in character or nature," or "mutually opposed" to the Supreme Court decision itself.  *Id*. at 406.  A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340

7

(2003).  Moreover, factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.  *See* 28 U.S.C. § 2254(e)(1).

## IV.   Analysis

### A.   Sufficiency of the Evidence

The Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt every fact necessary to constitute the crime with which he is charged.  *In re Winship*, 397 U.S. 358, 364 (1970).  On habeas review, the relevant question with respect to a sufficiency of the evidence claim is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  The question as to whether evidence was sufficient to support a conviction "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit."  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  In determining whether the evidence was sufficient, a federal habeas court "may not weigh conflicting evidence nor consider the credibility of witnesses"; rather, the court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (*quoting Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).  Morever, the provisions of AEDPA add "an additional degree of deference to state court's resolution of sufficiency of the evidence questions[]" on habeas review.  *Diestel v. Hines*, 506 F.3d 1249, 1267 (10th Cir. 2007) (*quoting Patton v. Mullin*, 425 F.3d 788, 796 (10th Cir. 2005)).  The standard "must be applied with explicit reference

to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16.

The jury in the instant case was instructed that under Oklahoma law in order to convict Petitioner of trafficking in illegal drugs, the State must prove each of the following elements of the crime beyond a reasonable doubt:

1. Knowingly;

2. Brought into Oklahoma or possessed;

3. Not less than 28 grams of cocaine.

Response, Ex. 7 at 3 (Jury Instruction No. 4). Petitioner challenges only the sufficiency of the evidence supporting the "knowingly" element of trafficking.

Although Petitioner maintains that he did not know there were illegal drugs in the trailer attached to his rig, the State presented evidence which supports a contrary conclusion. Officer James, who made the initial traffic stop, testified to circumstances, including inconsistencies in the documentation and in the statements of Petitioner and Mr. Cordova, the driver, which raised suspicion in his mind. In response to the officer's inquiry, Mr. Cordova, the driver, explained that it was his first trip since obtaining his CDL, and that Petitioner, who was a friend of his, had come along because he was familiar with the roads; however, Cordova was unable to tell Officer James either Petitioner's first or last name. Tr. at 27, 35. Officer James also testified that upon examination of some of the documentation, he noted that the bill of lading reflected that the load was picked up on March 29, 2006, when, according to Mr. Cordova's log book, he was off duty and before his license was even issued; moreover, the log book indicated that the truck didn't leave

California until March 31, two days later.  Tr. at 28-33.  Officer James explained that normally "when the load goes on the truck, it doesn't sit for two days[]" because "[t]hey're not making money if that truck is sitting still."  *Id.* at 30.  In addition, Petitioner told Officer James that Mr. Cordova had picked up the load, but Cordova said that Petitioner had picked it up.  Tr. at 37-38.  Officer James testified that such "finger pointing" by the parties presented a familiar situation in his experience where both parties are trying to "distance themselves from this load."  Tr. 38-39.  That "neither one of them want to have anything to do with that trailer[]" made James very suspicious that criminal activity was involved.  Tr. 39.

Officer James also testified that this van or trailer had a large refrigerated unit, the refer, which was not running at the time he executed the search.  Tr. 43-44.  Officer James noted that in his experience, it is "very, very rare to see a referred trailer pulling a dry load[]" because "[p]eople get these referred trailers because they're going to transport a referred (refrigerated) load."  Tr. 44.  In addition, Officer James testified that he was trained to look for "indicators" when executing a search, one indicator being "tooling" or scarring on screws or bolts in a vehicle which would indicate access to an area where illegal items have been concealed.  Tr. 42.  He noted several such indicators while searching Petitioner's truck, including for example, the screws and bolts holding the doors and plates in place around the refer which showed "excessive signs of tooling," like they had been taken off many times.  Tr. 45.  According to Officer James, of the many such units which he had observed, the nicking and scarring on the bolts in this truck were "by far the worst I've ever seen."  Tr. 46.  He also described hand prints and scuffing inside

the motor or housing area, again a situation which he had never seen before. Tr. 55-56. Finally, Officer James testified regarding a small grate which he described as an "after-market modification made to this refer[]" which had been added to "keep contraband or whatever . . . from falling into that area[]" where it could be damaged. *Id.*

Detective Aragon, a member of the COMIT team who had interrogated Petitioner, testified that the tractor in question was owned by and registered to Petitioner and that the terms under which Petitioner had become the owner were very unusual in the trucking business.[3] Tr. 156, 160-66. During Petitioner's interview, he told Aragon that while working as a truck driver for a company, he had been approached by a man he knew only as Gabriel about being his own owner-operator. Tr. at 161-62. Later, Petitioner contacted Gabriel and asked for $300 to pay his rent in response to which Gabriel gave him $1000 and explained that they would "work this out, I'll set you up, we'll get you going on this[.]" Tr. at 161-64. When Petitioner ultimately agreed, Gabriel informed him that all the necessary documents had been taken care of and that the truck had been registered in Petitioner's name without any down payment or any lien, the insurance had been paid, and his name had been signed for him. Tr. at 160-166. Petitioner told Detective Aragon that he knew something wasn't right from the beginning but that he was "greedy" and wanted his own truck. Tr. at 167. Petitioner told Detective Aragon that the first load he hauled for Gabriel involved a trip from California to a truck stop in New Jersey where he switched trailers with another driver whose name he didn't know, picked up an empty trailer and drove back to California. *Id.* at 167, 169. Detective Aragon testified further

---

[3]Detective Aragon testified that she was knowledgeable about the trucking industry base on her own experience as an owner and operator of a trucking company. Tr. at 134.

that Petitioner had two cell phones, his own personal phone and "one that was a Pager Plus phone" which only had two numbers stored in it. Tr. 183-84. Petitioner told the detective that with respect to the Page Plus phone, he had been "directed by Gabriel to get that phone and conduct business only on that phone" with Gabriel. Tr. 184. One of the numbers stored on the phone was "lock-protected" such that Detective Aragon was unable to retrieve it. Tr. 185. When she gave the phone to Petitioner and asked him to unlock the number, he attempted to delete the stored numbers before she could retrieve it back from him. *Id.*

In affirming Petitioner's conviction on direct appeal the OCCA found the evidence of trafficking was sufficient and held:

> In the first proposition of error, reviewing the evidence in the light most favorable to the State, we find the crime of Trafficking in Illegal Drugs was proved beyond a reasonable doubt. *See Eastlick v. State*, 2004 OK CR 21, ¶ 15, 90 P.3d 556, 559. *See also Carolina v. State*, 1992 OK CR 65, ¶ 5 839 P.2d 663, 665 ("[c]onstructive possession may be proven if there are additional independent factors which show the accused's knowledge and control of the drugs. Such factors may include incriminating conduct by the accused or other circumstances from which possession may be fairly inferred"). Any conflict in the evidence was for the jury's consideration, and their finding of guilt is clearly supported by the evidence. *See Gilson v. State*, 2000 OK CR 11, ¶ 29, 4 P.3d 883, 910.

Response, Ex. 3 at 2.

Because *Eastlick* prescribes use of the same standard found in *Jackson*, the OCCA identified the correct legal standard for reviewing a claim based on insufficiency of the evidence. *See Eastlick*, 90 P.3d at 558. The undersigned agrees with the OCCA that a jury could reasonably infer from such evidence that Petitioner had actual knowledge that drugs were hidden in his truck. Petitioner has not shown that the OCCA's disposition of

this ground for relief was either contrary to or an unreasonable application of Supreme

Court law.  It is therefore recommended that habeas relief be denied on this ground.

**B.**    **Jury Instructions**

Petitioner contends that the jury was not properly instructed as to the meaning of

"beyond a reasonable doubt."  In finding no error based on this ground for relief, the

OCCA held:

> In the second proposition, we review for plain error as [Petitioner] failed
> to request an instruction defining "beyond a reasonable doubt."  We find
> no plain error as there is no constitutional requirement to define "beyond
> a reasonable doubt."  Instructing the jury on the presumption of innocence,
> the definition of direct and circumstantial evidence, and that all of the facts
> and circumstances together must establish the defendant's guilt beyond a
> reasonable doubt, as was done in this case, sufficiently sets forth the
> applicable law.

Response, Ex. 3 at 2-3 (citations omitted).

Claims based on alleged erroneous jury instructions are generally not cognizable

in a federal habeas proceeding.  *See Maes v. Thomas*, 46 F.3d 979, 984 (1995).  Habeas

relief can be granted on the basis of erroneous jury instructions only "when the errors had

the effect of rendering the trial so fundamentally unfair as to cause a denial of due

process."  *Id.* (citations omitted).  The Supreme Court has specifically held there is no

constitutional requirement that juries be instructed on the meaning of "beyond a

reasonable doubt:

> The beyond a reasonable doubt standard is a requirement of due process,
> but the Constitution neither prohibits trial courts from defining reasonable
> doubt nor requires them to do so as a matter of course.  Indeed, so long as
> the court instructs the jury on the necessity that the defendant's guilt be
> proved beyond a reasonable doubt, the Constitution does not require that
> any particular form of words be used in advising the jury of the

> government's burden of proof.  Rather, taken as a whole, the instructions
> [must] correctly conve[y] the concept of reasonable doubt to the jury.

*Victor v. Nebraska*,  511 U.S. 1, 5, (1994)(internal citations and quotations omitted)

(alterations in original).  Petitioner has not demonstrated that the instructions given were

inadequate or erroneous so as to render his trial fundamentally unfair.  The OCCA's

rejection of this ground for relief is neither contrary to, nor an unreasonable application

of Supreme Court law, and relief on this ground is not warranted.

### C.    Ineffective Assistance of Appellate Counsel

Respondent contends that all of the grounds for relief asserted in Petitioner's

application for post-conviction relief, other than the claims of ineffective assistance of

appellate counsel, are barred from habeas review by an independent and adequate state

court procedural default.  *See English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998) ("On

habeas review, this court does not address issues that have been defaulted in state court on

an independent and adequate state procedural ground, unless the petitioner can

demonstrate cause and prejudice or a fundamental miscarriage of justice.)"

Based on the procedural doctrines of res judicata and waiver under Oklahoma state

law, the OCCA affirmed the trial court's denial of relief on Petitioner's  application for

post-conviction relief.  The Tenth Circuit Court of Appeals has determined that  "[b]oth

the res judicata bar to claims previously rejected and the waiver rule for claims not

previously raised . . .  are included in Okla. Stat. Ann. tit. 22, §§ 1086 and 1089, and both

are regularly and even-handedly applied by the state courts."  *Smallwood v. Gibson*, 191

F.3d 1257, 1268 n. 8 (10th Cir. 1999).  Therefore, the claims raised in Grounds III-XIII

are barred from consideration on federal habeas review unless Petitioner "can demonstrate

cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (internal quotation marks and citations omitted).

In this habeas action, Petitioner asserts ineffective assistance of appellate counsel both as a substantive claim and as cause to overcome the procedural bar of the grounds for relief first presented in his application for post-conviction relief. To determine whether Petitioner has sufficiently established his appellate counsel's ineffectiveness as cause to overcome the procedural default, the undersigned must consider the merits of the omitted claims.[4]

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984) governs the analysis of Petitioner's ineffective assistance of trial counsel and appellate counsel claims. *See Knowles v. Mirzayance*, 556 U.S. 111, ___, 129 S. Ct. 1411, 1419 (2009) ("[T]his Court has repeatedly applied [the *Strickland*] standard to evaluate ineffective-assistance-of-counsel claims where there is no other Supreme Court precedent directly on point."); *see also Smith v. Workman*, 550 F.3d 1258, 1268 (10th Cir. 2008) (noting that ineffective assistance of appellate counsel claims are governed by "the same test as used in evaluating a claim of ineffective assistance of trial counsel); *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) ("The proper standard for assessing a claim of ineffectiveness of trial or appellate counsel is that set forth in *Strickland* . . . .") (citations omitted). Pursuant to *Strickland*, Petitioner "must show both (1) constitutionally

---

[4]For many of the substantive grounds, Petitioner has also asserted that his trial counsel was ineffective in failing to object or failing to preserve the grounds for appeal.

deficient performance, by demonstrating that his appellate counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceedings . . . would have been different." *Cargle*, 317 F.3d at 1196.

This Court's review of the OCCA's determination of Petitioner's ineffective assistance of counsel claims is subject to the deference due all state court decisions in the context of federal habeas review. The Supreme Court recently clarified the deference due a state court's decision on habeas review when claims of ineffective assistance of counsel are at issue:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 785 (Jan. 19, 2011) (internal quotations and citation omitted). The Supreme Court emphasized that it is the result of the state court's decision which must "be evaluated according to the precedents of this Court." *Id.* at 786. The Supreme Court acknowledged that AEDPA's standard of review makes it difficult for a petitioner to obtain habeas relief:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 786-787.

### 1.     Trial Court's Abuse of Discretion

Petitioner alleges that the trial court "abused its discretion" in "multiple rulings and evidentiary matters[]"; that trial counsel was ineffective in failing to preserve this issue for appeal; and that appellate counsel was ineffective in failing to raise trial counsel's ineffectiveness on appeal. Petition at 23-24. Although this Court liberally construes the pleadings of pro se litigants, like any cognizable legal claim, the grounds for habeas relief must be supported by sufficient facts. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir. 1992) (finding naked allegations not cognizable under §2254). Petitioner does not identify the trial court's rulings which he alleges should have been challenged, nor does he present any factual support for his claim that the court abused its discretion. Petitioner thus fails to show that the underlying claim was meritorious and has not demonstrated that any prejudice resulted from appellate counsel's failure to raise such claims on direct appeal. The OCCA's denial of relief based on this claim was neither contrary to nor an unreasonable application of Supreme Court law.

### 2.     Improperly Admitted Evidence

Petitioner asserts this ground for relief as both a substantive claim and as an instance of trial and appellate counsel's ineffectiveness. Generally, "'State court rulings on the admissibility of evidence may not be questioned in federal habeas corpus proceedings unless they render the trial so fundamentally unfair as to constitute a denial

of federal constitutional rights.'" *Chavez v. Kerby*, 848 F.2d 1101, 1102 (10th Cir. 1988) (*quoting Brinlee v. Crisp*, 608 F.2d 839, 850 (10th Cir. 1979)). Petitioner has failed to identify the evidence he purports to challenge nor has he demonstrated that improperly admitted evidence rendered his trial fundamentally unfair. As previously discussed, bare allegations unsupported by facts do not warrant habeas relief. *See Ruark v. Gunter, supra.* Because Petitioner has not offered factual support for his claim that evidence was improperly admitted, he cannot demonstrate that any prejudice resulting from appellate counsel's failure to raise this claim on direct appeal. The OCCA's rejection of this claim was reasonable and was not contrary to Supreme Court law.

### 3.   Failure of Prosecutor to Comply with Discovery Order

Petitioner contends that the prosecution violated the court's discovery order by failing to produce a recording of the post-arrest interview of Petitioner conducted by Detective Aragon. Petitioner also contends his counsel was ineffective in failing to seek a continuance to prepare for the cross-examination of Detective Aragon and that appellate counsel was ineffective in failing to assert these claims on direct appeal.

During the trial, Detective Aragon testified that she had made a digital recording of her interview with Petitioner. Tr. 186. According to Petitioner's Statement of Facts in his application for post-conviction relief, the prosecutor's failure to produce the tape to the defense resulted in surprise and inadequate preparation by defense counsel. The transcript of defense counsel's examination of Detective Aragon, however, reveals no inadequacy in defense counsel's questions. Moreover, Petitioner obviously knew what was said during the interview, and, in fact, offered his own testimony regarding the interview with

Detective Aragon.  Tr. 251-257.  Petitioner has not demonstrated that he was prejudiced by the alleged discovery violation, by his counsel's failure to seek a continuance, or by appellate counsel's failure to raise this issue on direct appeal.  The OCCA's disposition of this claim is neither contrary to, nor an unreasonable application of Supreme Court law.

### 4.   **Prosecutorial Misconduct**

In his application for post-conviction relief, Petitioner stated generally that the prosecutor "express[ed] personal belief in defendant's guilt, disparag[ed] defense counsel, bolster[ed] the credibility of the state's witnesses and assert[ed] that failure to convict would be displeasing to God."  Petition at 23.  Petitioner also asserts that his trial counsel was ineffective in failing to object to these statements and that his appellate counsel was ineffective in failing to raise this issue on direct appeal.

The Supreme Court has held that prosecutorial misconduct may serve as the basis for habeas relief if the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. De Christoforo*, 416 U.S. 637, 642 (1974).  In this case, Petitioner has failed to identify the specific statements he wishes to challenge,[5] and he has failed to demonstrate that the prosecutor's conduct was so egregious as to undermine confidence in the outcome of the trial.  Thus, having failed to identify the objectionable statements, Petitioner has established neither cause nor prejudice arising from either his trial counsel's having failed to object to statements made by the prosecutor or appellate counsel's having failed to raise this issue on direct appeal.

---

[5]The undersigned's review of the record has not revealed any comment by the prosecutor regarding to an acquittal being "displeasing to God."

The OCCA's disposition of this claim is reasonable and in accordance with Supreme Court law.

### 5. <u>Violation of Vienna Convention on Consular Relations</u>

In his application for post-conviction relief, Petitioner contended that he was not informed of his right to seek assistance from the consulate of his native country, El Salvador. The United States Supreme Court has yet to definitively state that the Vienna Convention conveys individually enforceable rights to foreign nationals. *See Breard v. Greene*, 523 U.S. 371, 376 (1998) ("The Vienna Convention — which *arguably* confers on an individual the right to consular assistance following arrest — has continuously been in effect since 1969.") (emphasis added).

Even assuming that the Vienna Convention does confer rights to individuals, Petitioner has not demonstrated how violation of this right affected the outcome of his trial. *Breard* at 377 (*citing Arizona v. Fulminante*, 499 U.S. 279 (1991)).

The OCCA has held as a matter of state law that individual rights are conferred by the Vienna Convention. *See Torres v. State*, 120 P.3d 1184, 1186 (Okla. Crim. App. 2005). The OCCA has also held, however, that to prevail on such a claim, the defendant must make a threshold showing of how his consulate would have aided him during the trial. *Id.* at 1186-1187. Petitioner has not attempted to make such a showing and, therefore, he has failed to demonstrate that his trial counsel was ineffective in failing to inform him of his right or that his appellate counsel was ineffective in failing to raise this issue on direct appeal. Petitioner has not shown that the OCCA's decision regarding this claim was either contrary to, or an unreasonable application of Supreme Court law.

6. **Actual Innocence**

Petitioner's assertion of his "actual innocence" appears to be based on his contention that he did not "knowingly" possess illegal drugs. Petitioner presents no additional facts in support of this ground for relief other than those presented and rejected in the context of his insufficiency of the evidence claim. Moreover, the Supreme Court has clearly held that "a claim of actual innocence is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). Thus, Petitioner's conclusory claim of actual innocence fails to provide a basis for habeas relief, either as a freestanding claim or as the basis for a claim of ineffective appellate counsel. He is not entitled to relief on this ground.

7. **Newly Discovered Evidence**

Petitioner claims that he is entitled to have his conviction vacated based on newly discovered evidence. In considering Petitioner's claim of new evidence on appeal of denial of his post-conviction application, the OCCA identified the alleged "newly discovered evidence" as a letter from Petitioner's appellate counsel dated October 16, 2007. Because the date of the letter preceded the date of the OCCA's decision on direct appeal, the OCCA concluded that the letter was not "newly discovered" and could have been presented on direct appeal. Response, Ex. 5 at 3 n. 1.

The letter in question, an English translation of which is attached to the Petition, advised Petitioner that Gabriel Barrera, the man who arranged for Petitioner's "purchase" of his truck and for whom he was hauling the load for which he was arrested, had been

charged in connection with trafficking in drugs in New York State.  Prosecutors from the State of New York were seeking cooperation from Petitioner in making their case against Mr. Barrerra.  However, as appellate counsel pointed out to Petitioner, cooperation would require Petitioner to admit to having known about the illegal drugs stashed in the trailer he was hauling – a position diametrically opposed to his claim of innocence.  According to Petitioner, he declined to cooperate.  In any event, the arrest of Mr. Barrerra for trafficking had no bearing on Petitioner's conviction or appeal, and it certainly did not exonerate Petitioner.  Therefore, this claim is without merit, and appellate counsel was not ineffective in failing to raise the letter on direct appeal as evidence of Petitioner's innocence.  Petitioner has not shown that the OCCA's rejection of this claim was contrary to Supreme Court law or an unreasonable application of that law to the facts in this case.

### 8.    Prejudice Resulting from Display of the Seized Drugs at Trial

Petitioner contends that he was prejudiced by the display at trial of the large amount of drugs seized from the trailer he was hauling, that trial counsel was ineffective in failing to object to the display, and that appellate counsel was ineffective in failing to raise this issue on direct appeal.  As Respondent notes, however, the amount of drugs seized was relevant to the charge of trafficking and the state was charged with proving that element beyond a reasonable doubt.  Moreover, there is no requirement that physical evidence admitted at a trial be kept out of the jury's sight.  Defense counsel would have had no legal foundation for an objection to the presence of the evidence, and was not, therefore, ineffective in failing to object to the presence of the evidence.  As there was no error,

appellate counsel was not ineffective in failing to raise this issue on direct appeal, and the

OCCA's disposition of this claim was reasonable and does not violate Supreme Court law.

### 9.  Violation of Fourth Amendment Rights

In his application for post-conviction relief, Petitioner challenges the propriety of

the initial search of the trailer:

> During traffic stop, officers asked defendant for consent to search the contents of the trailer he was hauling and of which he was merely a bailee. Defendant opened his personal padlock partially securing the door, but informed officers that he lacked authorization to break the seal placed on the trailer door by the company which owned the trailer and its contents. Officers proceeded to break the seal and search without first obtaining consent from the owner or a search warrant.

Petition at 23.[6]  Petitioner contends that his trial counsel was ineffective in failing to seek

exclusion of the evidence found as a result of the search.

In this case, Officer James testified that he initially stopped the truck because it had

been straddling lanes for a substantial distance.  According to Officer James, Petitioner

initially indicated that he owned both the tractor and the trailer.  Tr. 36.  Both Petitioner

and Mr. Cordova, the driver, gave their permission to search the trailer.  Tr. 29.  Even so,

Officer James contacted the K-9 unit and did not enter the trailer until after the drug dog

had reacted to the presence of narcotics.  Tr. 40.  At that point, Officer James and other

members of COMIT opened the trailer and conducted a probable cause search.  Tr. 40.

The subsequent search at the COMIT office was pursuant to warrant.

---

[6]Pursuant to *Stone v. Powell*, 428 U.S. 465 (1976), a federal court on habeas review is generally precluded from reviewing a Fourth Amendment claim where the petitioner had a full and fair opportunity to present the claim in the state court proceedings.  *Stone's* restriction does not, however, extend to ineffective assistance of counsel claims which are founded primarily on incompetent representation with respect to a Fourth Amendment issue.  *See Kimmelman v. Morrison*, 477 U.S. 365, 383 (1986).

The record in this case demonstrates that the searches of the trailer were legally executed.  Petitioner consented to the initial search.  The fact that someone other than Petitioner may have owned the trailer did not render the search unlawful.  Petitioner represented himself as the owner of the trailer, and the COMIT officers were justified in relying on that representation.  *See United States v. Andrus*, 483 F.3d 711, 716 (10th Cir. 2007) ("Even where actual authority is lacking, however, a third party has apparent authority to consent to a search, when an officer reasonably, even if erroneously, believes the third party has authority to consent.").  Because the search did not run afoul of the Fourth Amendment, neither trial nor appellate counsel were ineffective in failing to challenge the search as unconstitutional or failing to seek an order suppressing the evidence.  The OCCA's determination of this issue was neither contrary to, nor an unreasonable application of Supreme Court law.

### 10.    Other Ineffective Assistance of Trial Counsel Claims

Petitioner also  asserts that his trial counsel was ineffective in various ways related to the nine substantive grounds for relief discussed above broadly construed to include claims that his trial counsel was ineffective in (a) failing to obtain an independent translation of the recorded conversation between him and Mr. Cordova; (b) failing to properly investigate and present evidence of ownership of the trailer by Gabriel Barrera of Popcorn Trucking; and (c) failing to seek exclusion of a juror who stated that the amount of drugs displayed in the courtroom was "certainly not recreational."  Petition at 23-24.  These claims fail to provide a basis for habeas relief.

### a.   Translation of Taped Conversation

After their arrest, Petitioner and Mr. Cordova were left alone in a room where they were videotaped without their knowledge.  Sergeant Balderrama translated relevant parts of the conversation conducted in Spanish between the two men and testified as to what they had said.  Tr. 196-208.  Petitioner contends that trial counsel was ineffective in failing to get an independent translation of the conversation recorded on the videotape.  Although Petitioner asserts that Balderrama's translation was erroneous, the only specific error he suggests is that his statements "should have been correctly translated from the Spanish subjective tense/mood as something consistent with, "I know where they <u>must have</u> put that shit in the trailer. It <u>must have been</u> where I picked it up.'"[7] Reply at 2 (Petitioner's emphasis).  Not only was Balderrama cross-examined regarding his translation, but Petitioner himself testified as to the exchange between the two and thus had an opportunity to give his own version of his statements.  Tr. 248-251.  Petitioner's account and Sergeant Balderrama's translation are similar.  Any discrepancies were subject to the jury's determination as to the credibility of the witnesses.  Petitioner has not demonstrated that an independent translation would reasonably have produced a different result at trial and absent such showing of prejudice, he cannot show that trial counsel was ineffective in failing to secure an independent translation, or that appellate counsel was ineffective in failing to raise this issue on direct appeal.  The OCCA's decision on this issue is neither contrary to, nor an unreasonable application of Supreme Court law.

_____

[7]According to Sergeant Balderrama's testimony, Petitioner's statement to Cordova was "I know where they put that shit, where I picked up that trailer."  Tr. 201.

### b.    <u>Failure to Investigate</u>

Petitioner contends that his trial counsel was ineffective in failing to investigate the ownership of the trailer in which the cocaine was hidden.  He further contends his appellate counsel was ineffective in failing to raise this claim on direct appeal.  In a related ground for relief, Petitioner contends that he became aware that the owner of the trailer had been arrested on trafficking charges in another state.  Claiming this knowledge as "newly discovered evidence," Petitioner alleged in his post-conviction application that the evidence of ownership of the trailer would have affected the outcome of his jury trial.  The OCCA rejected Petitioner's claim, however, because the fact that another person owned the trailer in question did not exonerate Petitioner or affect the trial in any way.  Lacking a showing of prejudice, Petitioner's related ineffective assistance of counsel claims are without merit.  The OCCA's decision regarding the alleged failure to investigate is neither contrary to, nor an unreasonable application of Supreme Court law.

### c.    <u>Failure to Seek Exclusion of Juror</u>

Petitioner alleges that he overheard one of the jurors state that the amount of drugs seized as a result of the traffic stop was not recreational.  Petitioner contends that his trial counsel was ineffective in failing to seek exclusion of the juror, and that his appellate counsel was ineffective in failing to raise this ground for relief on direct appeal.  Assuming the comment was in fact made, Petitioner has not shown that the comment indicated that the juror had prejudged Petitioner's guilt or that any prejudice resulted.  Having failed to demonstrate prejudice, Petitioner cannot show that either trial or appellate counsel was ineffective in failing to raise the issue.

In sum, Petitioner has failed to show that the OCCA's application of *Strickland* to any of Petitioner's claims, including his ineffective assistance of trial and appellate counsel claims, was either contrary to, or an unreasonable application of Supreme Court law.

## **RECOMMENDATION**

Based upon the foregoing analysis, it is recommended that the petition for a writ of habeas corpus be denied. Petitioner is advised of his right to file an objection to this Report and Recommendation in accordance with Fed. R. Civ. P. 72(b)(2). Any such objection must be filed with the Clerk of this Court by the 19th day of January, 2012. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 30th day of December, 2011.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE